## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 2:23-cv-14272-KMM

JOSHUA M. HUBBERT,

     Plaintiff,

v.

RICKY DIXON, *et al*.,

     Defendants.

_____

## **ORDER**

THIS CAUSE came before the Court upon Defendant Kenny Brinley's ("Defendant") Motion for Summary Judgment ("Mot."). (ECF No. 23). On November 28, 2023, *pro se* Plaintiff Joshua M. Hubbert ("Plaintiff") filed an Amended Complaint, ("Am. Compl.") (ECF No. 10) and supporting Memorandum ("Mem.") (ECF No. 10-1), seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff's claim arose out of an injury he sustained on September 23, 2019, at a workcamp run by Martin County Institution ("MCI") officials. *See id*. In an order screening the Amended Complaint pursuant to 28 U.S.C. § 1915(e), the Court described the facts as follows:

> On September 23, 2019, between 9:00 a.m. and 11:00 a.m., Plaintiff and several other inmates were driven to the Environmental Resources Department Fire Program ("ERDFP") in St. Lucie County. Mem. at 5. Officer Barron directed the inmates to follow Officer Brinley's directions to clean up a demolished shack on the ERDFP premises. *Id*. Officer Brinley assembled the crew and began to operate heavy equipment, namely, a backhoe. *Id*. Partially destroyed pieces of concrete laced with rebar were strewn around the site of the destroyed shack. *Id*. The plan was to break up the concrete and load it onto the backhoe for disposal. *Id*.

> Officer Brinley came across a piece of concrete that was too heavy for three inmates to lift. *Id*. As a result, he instructed all the inmates to "stand back" while he attempted to pry the piece of half buried concrete from the ground with the backhoe. *Id*. at 5–6. Officer Brinley wedged the backhoe's forklift attachment under a piece of concrete at which point the concrete shattered into five shards,

weighing approximately fifty pounds each.  *Id*. at 6.  The shards then went flying into the air.  *Id*.  All the inmates and ERDFP employees in the area turned to protect themselves.  *Id*.  Plaintiff felt one of the larger shards hit him on the head and back, driving him to the ground.  *Id*.  Once Plaintiff was able to stand; he felt injuries to his head, knees, and left shoulder.  *Id*.  The inmates were not wearing any safety equipment.  *Id*. at 6–7.

(ECF No. 11) at 2–3.  The Court allowed an Eighth Amendment conditions of confinement claim to go forward against Defendant.  *Id*. at 13.

Defendant has filed a motion for summary judgment (ECF No. 23) and a statement of material facts (ECF No. 24) with supporting exhibits (ECF No. 24-1; 24-2). Defendant argues that because there are no genuine issues of material fact in dispute, Defendant is entitled to summary judgment in his favor and argues that he is entitled to qualified immunity.  *See* Mot.  Plaintiff filed a response in opposition to the motion (ECF No. 26), response in opposition to the statement of material facts (ECF No. 27), and an affidavit in support of the responses (ECF No. 28).  Defendant filed a reply thereto.  (ECF No. 30).

For the reasons set forth in this Order, the Court concludes that summary judgment shall not issue in favor of Defendant.

## I.      LEGAL STANDARDS

### A. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."

*Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).

Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Id.* (citing *Anderson*, 477 U.S. at 248). In sum, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary judgment if the facts in the record—including those considered

undisputed—illustrate that the movant is entitled to judgment in its favor.  Fed. R. Civ. P. 56(e)(2).

### B. Eighth Amendment Standards

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) the defendants deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law.  *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001); *Stone v. Hendry*, 785 F. App'x 763, 767 (11th Cir. 2019).  In addition, Plaintiff must further allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation.  *Marsh v. Butler Cty.*, 268 F.3d 1014, 1039 (11th Cir. 2001).

Here, Plaintiff alleges that Defendant violated his Eighth Amendment rights based on the conditions of Plaintiff's confinement.  *See generally* Am. Compl.  The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  *See* U.S. Const. amend. VIII.

Under the Eighth Amendment, prisoners are protected from inhumane conditions of confinement.  *Farmer*, 511 U.S. at 832–33.  "Prison work assignments are 'conditions of confinement subject to scrutiny under the Eighth Amendment.'"  *Smith v. Thomas*, No. 2:12-CV-125-WKW, 2013 WL 800697, at *3 (M.D. Ala. 2013) (quoting *Lee v. Sikes*, 870 F. Supp. 1096, 1099 (S.D. Ga. 1994)); *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) ("Eighth amendment principles apply not only to judicially imposed punishments, but also when conditions of confinement constitute the punishment at issue.").  The constitutional prohibition against cruel and unusual punishment prohibits "knowingly compelling inmates to perform work beyond their strength, dangerous to their lives or health, or unduly painful."  *Johnson v. Calloway*, No. 2:14-

CV-182-WHA, 2017 WL 712635, *4 (M.D. Ala. 2017) (citations omitted).

To prevail on an Eighth Amendment claim based on prison workplace conditions, an inmate must show three things: "(1) a **substantial risk** of serious harm; (2) the defendants' **deliberate indifference** to that risk; and (3) a **causal connection** between the defendants' conduct and the Eighth Amendment violation." *Brooks*, 800 F.3d at 1301 (11th Cir. 2015) (emphasis added); *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

"The first element of deliberate indifference—whether there was a substantial risk of serious harm—is assessed objectively and requires the plaintiff to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Marbury*, 936 F.3d at 1233 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)).

"The second element—whether the defendant was deliberately indifferent to that risk—has both a subjective and an objective component." *Id*. The subjective component requires that the prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Id*. (quoting *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007)). With respect to the objective component, "the official must have responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Id*. (quoting *Rodriguez*, 508 F.3d at 617). "A prison official must have a 'sufficiently culpable state of mind' to be deliberately indifferent." *Williams v. DeKalb Cty. Jail*, 638 F. App'x 976, 977 (11th Cir. 2016) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)).

The defendant officers "must be aware of specific facts showing a particularized threat or fear felt by the inmate" and "must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury and not simply a mere possibility." *Davis v. Bradshaw*,

No. 9:14-cv-80429-RLR, 2020 WL 3507392, at *5 (S.D. Fla. 2020) (citing *Marbury*, 936 F.3d at 1236; *Carter*, 352 F.3d at 1349–50).

To establish the third element, causation, the plaintiff must show a "'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 622–23).

Other courts have considered § 1983 claims in connection to a work-place injury sustained by a *pro se* prisoner. *See Smith v. Thomas*, No. 2:12-CV-125-WKW, 2013 WL 800697 (M.D. Ala. 2013) (finding inmate stated a claim for deliberate indifference where supervisor forced him to use a chainsaw without training and he was severely injured); *Buckley v. Barbour Cty., Ala.*, 624 F. Supp. 2d 1335 (M.D. Ala. 2008) (same); *Lee v. Sikes*, 870 F. Supp. 1096 (S.D. Ga. 1994) (granting summary judgment for defendant where inmate plaintiff was injured by a boar while working on the prison hog farm); *Gill v. Mooney*, 824 F. 2d 192 (2d Cir. 1987) (finding inmate stated a claim when officer required him to continue working on a defective ladder after inmate informed him the ladder was unsafe).

## II.   FACTS

### A. Defendant's Version of Events

Defendant relies on the following exhibits in support of his Statement of Material Facts: Affidavit of Defendant Kenneth Brinley ("Brinley Aff.") (ECF No. 24-1) at 1–4; Contract between the Florida Department of Corrections ("FDOC") and the St. Lucie County Board of County Commissioners ("the County") (ECF No. 24-1) at 5–29; and Affidavit of Brion Pauley[1] ("Pauley Aff.") (ECF No. 24-2).

---

[1] In September of 2019, Brion Pauley was employed by the County as a Manager of Natural Resources with the Environmental Resources Department, which was responsible for the management and operation of all facilities and land owned by the County.  Pauley Aff. ¶ 2.

On September 29, 2015, the County entered a contract with the FDOC to allow the use of inmate labor in County work projects.  Brinley Aff. ¶¶ 3, 4; Pauley Aff. ¶¶ 3, 4.  Pursuant to a May 10, 2018, amendment to the contract, the parties extended the term to October 8, 2021.  *Id*.  FDOC officers oversaw the inmates as they engaged in the various construction projects identified by the County.  Brinley Aff. ¶¶ 7, 8; Pauley Aff. ¶¶ 7, 8.  Pursuant to the contract, the County was responsible to furnish tools, equipment, supplies, materials, and personal work items including personal protective equipment.  Brinley Aff. ¶ 6; Pauley Aff. ¶ 6.  The FDOC would retain physical custody of this equipment.  *Id*.

In 2019, the County owned property in Fort Pierce with a metal storage shed standing on top of a concrete slab.  Brinley Aff. ¶ 9; Pauley Aff. ¶ 9.  The County decided to demolish the shed and construct a permanent building for administrative offices and equipment storage for the County's Environmental Resource Department ("ERD").  Brinley Aff. ¶ 10; Pauley Aff. ¶ 10.  After destroying the shed, the County turned to inmate labor pursuant to the contract with the FDOC to break up and remove the concrete slab.  Brinley Aff. ¶¶ 12, 13; Pauley Aff. ¶¶ 12, 13.

The FDOC provided ten inmates, including Plaintiff, for this four-day project.  Brinley Aff. ¶¶ 14, 15; Pauley Aff. ¶¶ 14, 15.  According to Defendant, "[a]ll inmates were provided personal protective equipment including hard hats, gloves, goggles, reflective vests, and any other necessary protective equipment."  Brinley Aff. ¶ 16; Pauley Aff. ¶ 16.  After the concrete slab had been cut with concrete saws and jackhammers, the inmates were directed to remove the pieces and place them into a dumpster.  Brinley Aff. ¶ 18; Pauley Aff. ¶ 18.

On the date of the incident, Defendant was using a backhoe with a fork attachment to deposit the larger pieces of concrete into the dumpster.  Brinley Aff. ¶ 19; Pauley Aff. ¶ 19.  While the backhoe was in use, the inmates were told to stay 20 to 25 feet away from the equipment.

Brinley Aff. ¶ 20; Pauley Aff. ¶ 20.  Defendant did not observe any concrete "exploding."  Brinley Aff. ¶ 21; Pauley Aff. ¶ 21.  At all times, the safety of the inmates and the County employees was paramount.  *Id.*  While a small piece may have broken off one of the larger pieces, "no 50-pound pieces were ejected."  Brinley Aff. ¶ 22; Pauley Aff. ¶ 22.  Defendant learned that someone had been injured, however, all inmates remained on the job site and completed the task.  Brinley Aff. ¶ 23.  Brion Pauley was inside an office at the site of the incident all day, but he also learned of the accident and that the inmates completed the job before leaving.  Pauley Aff. ¶ 23.

### B.  Plaintiff's Version of Events

Plaintiff executed a sworn affidavit ("Plaintiff Aff.") in support of his version of the facts. (ECF No. 28).  In 2019, while housed at MCI, Plaintiff was assigned to an inmate work squad to provide work pursuant to a contract between the FDOC and the County.  *Id.* ¶¶ 1, 2.  On September 23, 2019, MCI officials ordered Plaintiff to work on a demolition project with County workers. *Id.* ¶ 3.  Plaintiff had no prior training in demolition or related safety procedures.  *Id.* ¶ 4.  Plaintiff was using a saw and jackhammer to break up concrete which was laced with rebar.  *Id.* ¶ 6. Because Plaintiff could not break the concrete down into pieces small enough to carry, Defendant used a backhoe with a fork attached.  *Id.* ¶¶ 7, 8.  No other FDOC officers were present.  *Id.* ¶ 10.

Plaintiff did not receive any instructions on where to stand while Defendant operated the equipment.  *Id.* ¶ 11.  Plaintiff was not wearing and was not issued a hard hat nor was he instructed to wear safety equipment.  *Id.* ¶ 12.  FDOC staff had instructed Plaintiff to follow Defendant's directions or risk being sent to confinement.  *Id.* ¶ 14.  Plaintiff was not told where to stand to ensure his safety.  *Id.* ¶ 17.  However, he "was previously directed to stand" approximately five to ten feet from the backhoe.  *Id.* ¶ 14.

Six inmates attempted to lift a slab of concrete, without success.  *Id.* ¶ 15.  While Defendant

was in the process of prying the concrete out of the ground, he yelled, "stand back." *Id*. ¶ 17.  A moment later, Defendant dislodged part of the concrete and chunks went flying through the air. *Id*. ¶ 18.  A fifty-pound piece of concrete hit Plaintiff in the back of his head, knocking him to the ground.  *Id*. ¶ 19.

## III.   DISCUSSION

### A.  Summary Judgment standard applied.

As the Court noted above, to prevail on an Eighth Amendment claim based on prison workplace conditions, an inmate must show three things: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation."  *Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015); *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

Defendant claims there was not a substantial risk of serious harm, and that Defendant was not deliberately indifferent to any risk because "[a]ll inmates were provided personal protective equipment including hard hats, gloves, goggles, reflective vests, and any other necessary protective equipment."  Brinley Aff. ¶ 16; Pauley Aff. ¶ 16.  Defendant does not identify who provided the equipment to Plaintiff or when it was provided.  *See id*.  Plaintiff counters that he was not provided with any protective gear or even instructed about the need to wear safety equipment.  Plaintiff Aff. ¶ 12.  Plaintiff notes that he had no experience in demolition.  *Id*. ¶ 4.

Defendant further supports his argument that there was no substantial risk, and that Defendant was not deliberately indifferent, by alleging that "inmates were told" to stand at least 20 feet away from the backhoe, without identifying who told them to do so.  Brinley Aff. ¶ 20; Pauley Aff. ¶ 20.  Meanwhile, Plaintiff alleges that he was told to stand only five to ten feet away when the backhoe was in use.  Plaintiff Aff. ¶ 14.  The parties also dispute whether the cement

"exploded" causing fifty-pound chunks to fly through the air.  *See* Brinley Aff. ¶¶ 21, 22; Pauley Aff. ¶ 21; Plaintiff Aff. ¶ 18.

Viewing the conflicting relevant evidence in the light most favorable to the Plaintiff, as is proper at the summary judgment stage, the Court must accept Plaintiff's version of these facts.  An attempt to resolve the facts in dispute would require the Court to step outside its assigned role and invade the province of the jury.  As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  Due to the existence of genuine issues of material fact, summary disposition of the Eighth Amendment conditions of confinement claim in favor of Defendant Brinley is not appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### B.  Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine balances the competing but equally important goals of affording officials immunity from suit for reasonable actions taken within the scope of their duties and holding those officials responsible who abuse their power.  *See id.*

A court must grant "qualified immunity unless the facts taken in the light most favorable to [the plaintiff] show: (1) that there was a violation of the Constitution and (2) that the illegality

of [the defendant's] actions was clearly established at the time of the incident." *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).  Once an official proves that he was acting within his discretionary authority, the burden shifts to the plaintiff to prove that the official's acts violated clearly established law of which a reasonable person would have known. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).

The Eleventh Circuit has held that "[a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (internal citations omitted).

Here, there was a clearly established constitutional right at the time of the alleged violation, namely, the right of a prisoner to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987); *Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015); *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

As is discussed in detail above, a genuine issue of material fact exists regarding whether Defendant's actions violated Plaintiff's Eighth Amendment rights in connection to the conditions of confinement.  Defendant is not entitled to qualified immunity at this point in the proceedings.

## V.      CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion for Summary Judgment (ECF No. 23), the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion for Summary Judgment (ECF No. 23) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of October 2024.

*K. M. Moore*

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:      **Joshua M. Hubbert**
B08892
Blackwater River Correctional Facility
Inmate Mail/Parcels
5914 Jeff Ates Road
Milton, FL 32583
PRO SE

**Jeffrey Alan Blaker**
Conroy, Simberg, & Ganon
1801 Centrepark Drive East
Suite 200
West Palm Beach, FL 33401
561-697-8088
Fax: 697-8664
Email: jblaker@conroysimberg.com